BARRY J. PORTMAN
Federal Public Defender
RONALD C. TYLER
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant LACY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>    v.<br><br>ROY LACY,<br><br>         Defendant. | No. CR 07-0317 WHA<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

**INTRODUCTION**

On June 12, 2007, Roy Lacy pleaded guilty to a single- count information charging unarmed bank robbery, in violation of Title 18 U.S.C. § 2113(a). Sentencing in this matter is scheduled for October 2, 2007.

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed to recommend a sentence based on Offense Level 19 of the advisory Sentencing Guidelines. The criminal history category was to be that established by the Court. Based on the Presentence Report (PSR) calculation of Criminal History Category VI, the parties are bound to recommend a sentence within the range of 63 to 78 months.

The PSR arrived at a final offense level of 21, two points higher than the plea agreement, with a correspondingly higher advisory guideline range. The recommended sentence

from the PSR is 80 months. For the reasons set forth below, Roy Lacy disagrees with the PSR recommendation. He asks that the Court impose a 63 month sentence, after taking into account all of the statutory purposes of sentencing, including the advisory guidelines.

## BACKGROUND[1]

### I.   Personal History

#### A.  Childhood, Family Background and Employment

Roy Lacy is twenty-six years old. He was born in Bakersfield, California. He suffered through an extremely chaotic childhood. His mother was a poly-substance abuser who left a stable marriage when Roy was seven. There followed many years of mother and son crisscrossing the country, from truck stop to truck stop. From California to Ohio, Utah, Wisconsin and New York, Roy's childhood featured frequent stretches of sitting at home alone, with his mother returning only to focus her attention on whatever stranger she brought home to her bedroom. Her neglect metamorphosed into serious physical abuse by the time Roy was eight. From her drug-induced paranoia, she often falsely accused her grade school-aged son of stealing the drugs she misplaced. She would lash out, injuring him so severely that he still bears the scars and broken teeth to prove it.

Partial salvation arrived when Roy was twelve. School officials discovered the abuse and he was removed from his mother's care. He spent the balance of his childhood in and out of group homes and, at times, with his mother. Although the changes in custody were less physically damaging, they were no less chaotic. His mother died, suddenly, of a brain aneurysm, when Roy was eighteen. Her death left with him with a multitude of unresolved issues and accelerated his own drug abuse.

Roy's haphazard upbringing dramatically affected his schooling. His last formal schooling was in the ninth grade, in 1996, though he was able to obtain his G.E.D. in 2004.

---

[1]   Unless otherwise indicated, the PSR is the source for all facts referenced herein.

DEFT SENT MEMO                          - 2 -
*U.S. v. Lacy*, CR 07-0317 WHA

In the aftermath of his disastrous childhood, Roy Lacy has been unsuccessful as a young adult, in terms of forming lasting relationships or maintaining long-term employment.

### B. Physical and Mental Condition

In addition to the lasting physical evidence of childhood abuse, adverted to earlier, Roy Lacy is burdened with related adulthood ailments. He has a serious, chronic addiction to methamphetamine. He first used the drug at age 13 and has been a daily user for the past nine years. He also has a history of serious heroin addiction. It is not surprising that a person with his level of addiction has previously found treatment success challenging. Nonetheless, he is now motivated to succeed, rather than face the possibility of lengthy return trips to prison. His best chance is present in the form of the Bureau of Prisons 500-hour residential treatment program (completion of which will not reduce his sentence at all), followed by outpatient treatment during supervised release.

Roy Lacy also has psychological scars from his horrible childhood. Twice, he has attempted to kill himself – first as a young adolescent and later as a young adult. Mental health counseling during supervised release will be a critical component of his future success.

### C. Prior Record

As is depressingly commonplace for adult survivors of serious abuse and neglect, Roy Lacy embarked on a path of substance abuse and criminal misconduct. Over the last seven years, he has suffered five convictions. Not surprisingly, most of those convictions are drug-related. PSR ¶¶ 28-30, 32.

To his credit, only one of his convictions resulted in prison sentence, with all the others leading to county jail terms of a year or less. PSR ¶¶ 28-32.

## II. Acceptance of Responsibility

On April 25, 2007, Roy Lacy was arrested on a parole violation warrant. The very next day, when he was visited by an F.B.I. agent in custody, he waived his right to remain silent and confessed to the charges later presented against him in federal court. He told the agent that he is addicted to methamphetamine and heroin; that he used the money to buy drugs and pay for his housing.

# ARGUMENT

## I. The Court Has the Discretion to Impose a Sentence Other Than That Suggested by the Advisory Guidelines.

In light of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), district courts now have considerable sentencing discretion. The Ninth Circuit has instructed sentencing courts to undertake a two-step procedure: first a court is to determine the applicable range under the advisory guidelines. After this starting point, the court is to impose a reasonable sentence, taking into account the various purposes of sentencing, as set forth in Title 18 U.S.C. § 3553(a). *United States v. Mohamed*, 459 F.3rd 979, 985 (9th Cir. 2006) (citing *United States v. Cantrell*, 433 F.3rd 1269, 1279 (9th Cir. 2006)).

The sentence imposed need not hue to the advisory guidelines. Instead, "[D]istrict courts must provide specific reasons for their sentencing decisions, such that the record on appeal demonstrates explicit or implicit consideration of the sentencing factors set forth in § 3553(a)." *Mohamed*, *supra*, at 985.

Moreover, a sentencing decision outside of the advisory range need not be defined in terms of pre-*Booker* guidelines "departures". The Ninth Circuit has explicitly replaced the old departure scheme with a reasonableness standard based on the sentencing statute:

> We think the better view is to treat the scheme of downward and upward "departures" as essentially replaced by the requirement that judges impose a "reasonable" sentence. The discretion that the district court judge employs in determining a reasonable sentence will necessarily take into consideration many of the factors enumerated in Section 5K of the Guidelines but to require two exercises–one to calculate what departure would be allowable . . . and then to go through much the same exercise to arrive at a reasonable sentence is redundant.

*Id.* At 986-87. The Ninth Circuit has clearly concluded that, instead of departures, any sentence outside of the advisory range is an exercise of discretion:

> [O]ut of a recognition that the concept of formal departures has become anachronistic, we hold that any deviation from the applicable advisory guidelines range will be viewed as an exercise of the district court's post-*Booker* discretion and reviewed only for reasonableness."

*Id.* At 987.

At the same time, of course, district courts should not completely ignore the former guidelines departure regime, which may be helpful in arriving at a reasonable sentence: "If a district court's reasons for exercising its post-*Booker* discretion coincide with the factors allowed or encouraged under the pre-*Booker* system of departures, such overlap may suggest that the sentencing decision was reasonable." *Id.* (citation omitted).

## II. A Sixty-three Month Sentence Is Reasonable in Light of All of the Statutory Purposes of Sentencing.

As a starting point, the final PSR sets the advisory guideline calculations. Because of his five convictions and the recency of the 2003 drug case, in particular, the advisory guidelines consider Roy Lacy to be in Criminal History Category VI, with a suggested sentencing range from 77 to 96 months in custody. Thankfully, that calculation begins, rather than ends, the analysis. In arriving at a just sentence, the Court should consider the opening lines of Title 18 U.S.C. section 3553: "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. 3553(a). When those purposes are taken into account, the sixty-three month sentence sought by Mr. Lacy represents a reasonable and just decision.

Title 18 U.S.C. § 3553 instructs judges to consider the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The statutory language does not limit this evaluation to a

specified list of permissible factors.  A related provision explicitly codifies the expansive nature of the inquiry, stating that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.

### A.  Roy Lacy's Prior Record Demonstrates the Need for Increased Punishment But Not A Severe Sentence.

Mr. Lacy recognizes that he has numerous prior convictions.  However, the nature of those priors demonstrates that the Court can address punitive, protective, deterrent and rehabilitative goals by imposing the recommended sentence.

The available information in the PSR demonstrates that Mr. Lacy's misconduct is driven by substance abuse, abuse born of a wretched childhood.  A comprehensive approach would be to impose a sentence that properly incapacitates and deters him, while also preparing him for a long and productive adulthood.

### B.  A Sixty-three Month Sentence Would Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Deterrence and Protect the Public While Balancing Other Sentencing Goals.

Mr. Lacy acknowledges that the court must impose a sentence in line with the seriousness of the crime and addressing punitive, deterrent and protective goals.  A sixty-three month sentence accomplishes those goals.  A sixty-three month prison term will be far and away the largest sentence Roy Lacy has ever received.  It will also mark his first time in federal prison.  Mr. Lacy hardly could miss the message of the need to respect the law in the future after serving such a sentence.

DEFT SENT MEMO                                     - 6 -
*U.S. v. Lacy*, CR 07-0317 WHA

Moreover, being out of the community for such a lengthy time period will provide significant protection for the public. Protection will also be addressed by the recommended three-year term of supervised release. Any recidivist behavior after prison could quickly be addressed.

### C. A Sixty-Three Month Sentence Balances Roy Lacy's History and Characteristics Against the Other Goals..

Roy Lacy's childhood abuse and consequential adult substance abuse and mental health issues represent the most significant components of his history and characteristics.

The most useful manner in which to address those features of his life is through a sentence that punishes and rehabilitates. The suggested sentence, especially with the B.O.P. residential treatment and supervised release drug and mental health treatment conditions, is the type of holistic response that represents the best that federal courts can offer.

**CONCLUSION**

For all of the foregoing reasons, Roy Lacy respectfully requests that the Court impose the sentence of sixty-three months in prison, followed by three years of supervised release, together with the other conditions set forth in the PSR.

Dated: September 28, 2007

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

/S/

RONALD C. TYLER
Assistant Federal Public Defender